

## THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

November 15, 1990

Honorable J. Collier Adams, Jr.
Cochran County Attorney
109 West Washington
Morton, Texas    79346

Opinion No. JM-1248

Re:  Validity of a bid so-
licitation which does  not
comply with the publishing
requirements  of    section
262.025(a)  of  the  Texas
Local Government Code
(RQ-2050)

Dear Mr. Adams:

You ask three questions about the county's purchase, by
means of competitive bidding, of a motor grader.  First, you
ask whether  the solicitation  of bids  for the  grader  was
valid.

You tell us that  the solicitation was published  twice
in a local newspaper, on  December 21, 1989, and on  January
4, 1990.  We understand that the newspaper was not published
during the intervening Christmas week  in 1989 and that  the
bids were opened on January 19, 1990.

Subchapter C  of Chapter  262 of  the Local  Government
Code requires that county purchases of more than $10,000  be
made by competitive bidding, and section 262.025(a) requires
the solicitation of bids, as follows:

> (a)  A notice of a proposed purchase  must
> be published at least once a week in a  news-
> paper of general  circulation in the  county,
> with the first  day of publication  occurring
> before the 14th  day before the  date of  the
> bid opening.  If there  is no  newspaper  of
> general circulation in the county, the notice
> must be posted  in a prominent  place in  the
> courthouse for 14 days before the date of the
> bid opening.

Local Gov't Code § 262.025(a) (our emphasis).

This statute  has  not  been  previously  subjected  to
published legal  analysis.   In construing  the  publication

requirements, we are assisted by considering the subsection as a whole. The subsection defines two alternative methods for giving notice of the proposed contract, publication, and posting. In those cases where there is no "newspaper of general circulation,"[1] the courthouse posting alternative requires posting for the 14 day period immediately preceding the opening of the bids. An equivalent notice is achieved through publication where the initial publication is made once each week for the two weeks preceding the bid opening. Read literally, the statute requires a publication once each week from the first publication until the opening of the bids. We believe that the legislature here intended to require that notice of the contract be published in a newspaper, as it would be posted in the courthouse, once a week for at least the two consecutive weeks immediately prior to the opening. Further, if the original publication occurs on a more remote date than the 15th day before the date of the bid opening, there will be additional weeks of publication.[2]

In the circumstances you describe, the first publication of the notice occurred 29 days before the opening (Dec. 21, 1989). The second posting occurred on January 4, 1990, because there was no paper published during the Christmas week. As we read the statute, there should have been another publication in the week following the January 4, 1990, publication and preceding the week of the opening (on January 11, 1990, for example). Therefore, we believe that the publication of notice for this bid does not technically fulfill the statutory requirements.

You next ask about the validity of the restrictive specification, "Bids on Total Cost Only," which you indicate is intended to ensure a maximum amount to be spent on parts

---

1. You neither ask about nor supply information relative to the question of whether the newspaper is one of general circulation; thus we do not address that issue but assume that the newspaper meets the requirement. See Robinson v. State, 143 S.W.2d 629, 633 (Tex. Civ. App. - Dallas 1940, writ dism'd, judgm't cor.).

2. The statute requires publication "at least once a week," unlike similar statutes that limit the publication requirement to "once a week for two consecutive weeks." See, e.g., Local Gov't Code §§ 271.055(b)(1) (public works contracts paid out of certificates of obligation); 252.041(a) (municipal contracts).

and a guaranteed repurchase price for the equipment. As noted in your brief, this office has previously approved the use of total cost bidding specifications. Attorney General Opinion C-788 (1966). In that opinion, this office considered, as here, a county's specification of a guaranteed repurchase price and maximum parts replacement cost in its call for bids on road machinery. That opinion concluded that the definition of purchasing specifications was a matter for the commissioners court. At the time that opinion was issued, there were no state statutes governing a county's sale of personal property. Thus, Attorney General Opinion C-788 considered the repurchase, or sale, of the motor grader only as it related to the specifications for the county's original purchase and not as the separate sales transaction that it really is. Subsequent to the issuance of C-788, the legislature statutorily limited the means by which counties can dispose of personal property.

In 1981, the legislature adopted a statute, now found at section 263.151, et seq., Local Government Code, governing counties' sales of personal property. Acts 1981, 67th Leg., ch. 647. At the time that statute was enacted, the legislature recognized that counties act pursuant to legal authorization. We quote from the bill analysis:

> Counties are administrative arms of the State, and as such, have no implied powers. The Legislature grants such authority as it sees fit, and this must be literally interpreted.
>
> A check of the statutes revealed no reference to the sale of salvage [or] property deemed surplus or unfit for a county's need. However, counties already generally follow the procedures outlined below for the disposal of surplus or unusable properties.

Bill Analysis, H.B. 2178-2, 67th Leg. (1981); see also Public Hearing on H.B. 2178-2 before the House Comm. on Intergov. Aff., 67th Leg. (May 6, 1981) (tape on file with House Technical Services).

Section 263.151(2) of the code defines "surplus property" as follows:

> (2) 'Surplus property' means personal property that:
>
>> (A) is not salvage property or items routinely discarded as waste;

> (B) is not currently needed by its owner;
>
> (C) is not required for the owner's foreseeable needs; and
>
> (D) possesses some usefulness for the purpose for which it was intended.

Local Gov't Code § 263.151(2).

Section 263.152 of the code defines the methods by which a commissioners court may dispose of personal property as follows:

> The commissioners court of a county may:
>
> (1) periodically sell the county's surplus or salvage property by competitive bid or auction;
>
> (2) offer the property as a trade-in for new property of the same general type if the commissioners court considers that action to be in the best interests of the county; or
>
> (3) order any of the property to be destroyed or otherwise disposed of as worthless if the commissioners court undertakes to sell that property under Subdivision (1) and is unable to do so because no bids are made.

Local Gov't Code § 263.152.

We do not believe that the legislature intended to allow the guaranteed repurchase that is presented by your questions. Such a repurchase is not a "trade-in" as that term is generally understood. In a trade-in, a county sells one piece of property and simultaneously acquires another. In total cost, the county acquires property and contracts to sell that same piece of property at some later time. While the transfer of property would be accomplished by means of competitive bidding, the bid was let relative to the original purchase of the machine, and no bid was let relative to the sale of the machine, as allowed by section 263.152 of the Local Government Code.

While chapter 262 requires competitive bidding for certain purchases and chapter 263 allows it as an option for the sale of county personal property, we do not believe that the competitive bidding requirements for the two different

transactions can be met through a single competitive bid. After all, when the bid was made and accepted for the county's purchase of the machine, the county did not own the machine and could not sell it.

Your third question asks whether the guaranteed re-purchase price portion of the contract is valid with respect to section 263.151 of the Local Government Code. We need not answer that question separately inasmuch as we have answered it above. Nor do we address the issue of the validity of the contract as a whole.

### S U M M A R Y

Section 262.025 of the Local Government Code, in certain instances, requires publication of notice of a proposed purchase once each week until the opening of bids, with the first publication to occur no later than the 15th day before the date of the bid opening. While a commissioners court has the authority to determine specifications for items to be purchased or sold by the county under competitive bids, they may not combine the two transactions in a single bid.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General